## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
## GREENVILLE DIVISION

DEAN C. BOYD                                                          PLAINTIFF

v.                                                          No. 4:21CV159-GHD-DAS

SILVIA SUTTON, ET AL.                                                DEFENDANTS

### MEMORANDUM OPINION

This matter comes before the court on the *pro se* prisoner complaint of Dean C. Boyd, who challenges the conditions of his confinement under 42 U.S.C. § 1983. For the purposes of the Prison Litigation Reform Act, the court notes that the plaintiff was incarcerated when he filed this suit. The plaintiff has brought the instant case under 42 U.S.C. § 1983, which provides a federal cause of action against "[e]very person" who under color of state authority causes the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. The plaintiff alleges that the defendants abused him during his stay at Allegiance Specialty Hospital of Greenville, a Long-Term Acute Care Facility ("ASH") in Greenville, Mississippi – and during his transport back to the Mississippi State Penitentiary. Defendant Charles Thomas has moved for summary judgment; Boyd has responded, and the matter is ripe for resolution.[1] For the reasons set forth below, the instant motion for summary judgment will be granted, and the plaintiff's claims against defendant Thomas will be dismissed without prejudice for failure to exhaust administrative remedies. As Thomas is the sole remaining defendant, the instant case will be dismissed in its entirety.

---

[1] The other defendants in this case have been dismissed; Charles Thomas is the sole remaining defendant.

### Summary Judgment Standard

Summary judgment is appropriate if the "materials in the record, including depositions,

documents, electronically stored information, affidavits or declarations, stipulations (including those

made for purposes of the motion only), admissions, interrogatory answers, or other materials" show

that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a) and (c)(1). "The moving party must show that if the evidentiary

material of record were reduced to admissible evidence in court, it would be insufficient to permit the

nonmoving party to carry its burden." *Beck v. Texas State Bd. of Dental Examiners*, 204 F.3d 629,

633 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), *cert. denied*, 484 U.S. 1066

(1988)). After a proper motion for summary judgment is made, the burden shifts to the non-movant to

set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby,* Inc.,

477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Beck*, 204 F.3d at 633; *Allen v.*

*Rapides Parish School Bd.*, 204 F.3d 619, 621 (5th Cir. 2000); *Ragas v. Tennessee Gas Pipeline*

*Company*, 136 F.3d 455, 458 (5th Cir. 1998).

Substantive law determines what is material. *Anderson*, 477 U.S. at 249. "Only disputes over

facts that might affect the outcome of the suit under the governing law will properly preclude the entry

of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*, at

248. If the non-movant sets forth specific facts in support of allegations essential to his claim, a

genuine issue is presented. *Celotex*, 477 U.S. at 327. "Where the record, taken as a whole, could not

lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 89 L. Ed. 2d 538 (1986);

*Federal Savings and Loan, Inc. v. Krajl*, 968 F.2d 500, 503 (5th Cir. 1992).

The facts are reviewed drawing all reasonable inferences in favor of the non-moving party. *Allen*, 204 F.3d at 621; *PYCA Industries, Inc. v. Harrison County Waste Water Management Dist.*, 177 F.3d 351, 161 (5th Cir. 1999); *Banc One Capital Partners Corp. v. Kneipper*, 67 F.3d 1187, 1198 (5th Cir. 1995). However, this is so only when there is "an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *see Edwards v. Your Credit, Inc.*, 148 F.3d 427, 432 (5th Cir. 1998). In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (emphasis omitted).

The very purpose of summary judgment is to "pierce the pleadings and assess the proof in order to see whether there is a genuine issue for trial." Advisory Committee Note to the 1963 Amendments to Rule 56. Indeed, "[t]he amendment is not intended to derogate from the solemnity of the pleadings[;] [r]ather, it recognizes that despite the best efforts of counsel to make his pleadings accurate, they may be overwhelmingly contradicted by the proof available to his adversary." *Id.* The non-moving party (the plaintiff in this case), must come forward with proof to support each element of his claim. The plaintiff cannot meet this burden with "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356 (1986), "conclusory allegations," *Lujan v. National Wildlife Federation*, 497 U.S. 871, 871-73, 110 S.Ct. 3177, 3180 (1990), "unsubstantiated assertions," *Hopper v. Frank,* 16 F.3d 92 (5th Cir. 1994), or by a mere "scintilla" of evidence, *Davis v. Chevron U.S.A., Inc.,* 14 F.3d 1082 (5th Cir. 1994). It would undermine the purposes of summary judgment if a party could defeat such a motion simply by "replac[ing] conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888, 110 S.Ct. 3177, 3188 (1990).

In considering a motion for summary judgment, a court must determine whether the non-moving party's allegations are *plausible*. *Matsushita, supra.* (emphasis added). "[D]etermining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937 (2009) (discussing plausibility of claim as a requirement to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6)). Once the court "has determined the relevant set of facts and drawn all inferences in favor of the nonmoving party *to the extent supportable by the record*, [the ultimate decision becomes] purely a question of law." *Scott v. Harris*, 550 U.S. 372, 381 (2007) (emphasis in original). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on the motion for summary judgment." *Id.* at 380.

### Undisputed Material Facts

The court has derived most of the facts in this section from the plaintiff's allegations, which, for the purpose of the instant motion for summary judgment only, the court will assume to be true. As the other defendants have been dismissed from this case, the outcome of the instant summary judgment motion turns, not on the plaintiff's substantive allegations, but on whether he exhausted his administrative remedies as to his claims against defendant Thomas before filing suit. The court has, however, included the facts alleged in the complaint to paint a clearer picture of the plaintiff's case – including the allegations against Thomas.

### Boyd's Substantive Allegations Regarding His Stay at ASH

Mr. Boyd, a Mississippi state inmate, underwent neck surgery on February 10, 2020, and was admitted to Merritt Health Group Hospital in Jackson, Mississippi until February 14, 2020. Doc. 1-2. He was then transported to Allegiance Specialty Hospital of Greenville, a Long-Term Acute Care

Facility ("ASH") in Greenville, Mississippi.[2] *Id.* ASH employed Advert Security Contractor ("Advert Security") (a private company) to provide security personnel for the hospital.

John C. Herzog, M.D. ("Dr. Herzog"), is a cardiologist whose private practice is in Greenville, Mississippi; he has privileges at ASH. Boyd alleges that Dr. Herzog failed to protect him from the attack of Lt. Sutton and others because Boyd was "under [Herzog's] care" at the facility it was his responsibility "to protect [Boyd's] welfare." Doc. 13 at 4.

Upon Boyd's arrival at ASH, Lt. Silvia Sutton, a guard at the hospital employed by Advert Security, began verbally harassing him, stating, "This is my hospital. I run it. Do you hear what I'm saying nigga?" Boyd responded, "Yes, ma'am, I hear you," then closed his eyes and fell asleep due to fatigue from his surgery. Sutton then flew into a rage. She ordered the Advert guard out of the room, then and assaulted Boyd by twisting his iron shackles, which bound him to the hospital bed. Boyd is a quadriplegic, other than his right arm. Sutton continued to harass and assault Boyd over the next seventeen days by: (1) beating him in the face with his bed covers; (2) ripping his neck brace off (thus tearing the surgical site incision – and causing a staph infection); and (3) trying to cover Boyd's face with a bleach-soaked towel.

According to Mr. Boyd, Registered Nurse Misty Hughes (an employee of ASH) also assaulted him, screaming, "If you don't get your ass out that bed I will drag you out of it;" then dragged him out of his hospital bed by his neck brace. However, at the time relevant to the instant complaint, Misty Hughes was a registered/charge nurse, not a case manager as Boyd has alleged. *See* Affidavit of Misty Hughes, Exhibit 1. In her capacity as a nurse, Ms. Hughes did not treat or interact with Dean

---

[2] Mr. Boyd mistakenly alleged that he was treated at "Leland Miss. Medical Clinic 'Alliance' Supported by Delta Regional Medical Center." Doc 1, p. 4, para. A. However, during the dates he has alleged, he was treated at ASH, a private hospital.

Boyd. *Id.* Ms. Hughes was not a case manager at the time of Mr. Boyd's admission to ASH. *See* Exh. 1. Ms. Hughes was a charge nurse, primarily supervising and assisting other nurses with nursing procedures, rather than providing routine patient care. *Id.* She has personally reviewed Mr. Boyd's records and confirmed that she was never involved in his treatment or care. *Id.* She was not involved in Mr. Boyd's discharge process or any transfer of custody of Mr. Boyd from Allegiance Specialty Hospital to the Mississippi Department of Corrections. *Id.* Boyd originally identified Misty Hughes as "Case Manager Allison." Though ASH has no current employee by that name, the hospital did employ a Case Manager named Allison at the time of Boyd's admission; she moved to Louisiana several years ago. *Id.* This appears to be a case of mistaken identity.

C.N.A. Veronica Bell (an employee of ASH) helped Case Manager Allison drag Boyd out of his bed by his neck brace.

Charles Thomas (employed by the Mississippi Department of Corrections) did not stop Case Manager Allison from dragging Boyd out of his bed. Thomas then secured Boyd to the wheelchair with a bedsheet and wheeled him to the prison van for transport. He ordered two inmates to carry Boyd into the van and secure him there with seatbelts. When that did not work, Thomas ordered the inmates to sit on the seat with Boyd and hold him so he would not slide off the seat during transport. Boyd was then transported – secured to his place in the van seat with seatbelts – and being held by two of his fellow inmates.

Captain Campbell (an employee of Advert Security) threatened security contractor staff with termination if they told others about Lt. Sutton's harassment and abuse of Boyd.

Based on these allegations, according to Mr. Boyd, the various defendants, without provocation, either attacked him, helped with the attacks, failed to intervene, or covered them up. Indeed, the plaintiff has offered no motive whatsoever to explain why the wide array of defendants

might coordinate their efforts to harass, harm, and torture him. Boyd has offered no proof of his allegations. Regardless, as discussed below, he has not properly exhausted his claims as required under the Prison Litigation Reform Act.

### Facts Regarding Whether Boyd Exhausted His Administrative Remedies Before Filing Suit

Beginning on or around September 10, 2020, Dean Boyd submitted an Administrative Remedy Program grievance ("ARP") containing numerous allegations, including allegations of abuse by nurses, case managers, private security guards, and MDOC officers (including defendant Charles Thomas). In the grievance (MSP-20-1076) Boyd sought $5,000,000 in damages against each of the named individuals. *See* Exhibit "A"[3] at MDOC-BOYD 159-000078-81. Boyd's grievance against Thomas and the other named individuals was rejected because the relief requested was monetary compensation – a form of relief beyond the power of the ARP to grant. *Id.* at MDOC-BOYD 159-000060 (Pennington Affidavit) and MDOC-BOYD-159-000076. Boyd received the rejected response on September 21, 2020. *Id.* at MDOC-BOYD 159-000077. He never resubmitted a corrected grievance; instead, he submitted another grievance on September 25, 2020, containing substantially the same allegations. *Id.* at MDOC-BOYD 159-000062-67. In this grievance, Boyd increased his demand against each of the named individuals, including Thomas, to $20,000,000. *Id.* at 67. Pennington responded with a letter dated October 5, 2020, advising Boyd that the September 25, 2000, grievance would not be processed because it pertained to the same individuals and events contained in MSP-20-1076, and also requested money damages. *Id.* at MDOC-BOYD 159-000061.

---

[3] The exhibits referenced in this memorandum opinion may be found attached to the defendant's motion for summary judgment.

Boyd never resubmitted a proper corrected grievance. *Id.* at MDOC-BOYD 159-000060. He filed

the instant suit on November 2, 2020. *See* generally Doc. 1.

### Failure to Exhaust Administrative Remedies

It is clear on the record before the court that the plaintiff did not exhaust his administrative

remedies before filing the instant suit, as required under the Prison Litigation Reform Act:

> No action shall be brought with respect to prison conditions under [42 U.S.C.§ 1983],
> or any other Federal law, by a prisoner confined in any jail, prison, or other prison
> until such administrative remedies as are available are exhausted.

*See* 42 U.S.C. § 1997e(a). Congress enacted the Prison Litigation Reform Act ("PLRA"), 42

U.S.C. §1997e *et seq.* – including its requirement that inmates exhaust their administrative

remedies prior to filing suit – in an effort to address the large number of prisoner complaints

filed in federal courts. *See Jones v. Bock*, 549 U.S. 199, 202 (2007). Congress created the

exhaustion requirement to weed out the frivolous claims from the colorable ones. *Id.* at 203.

Thus, the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e(a), requires prisoners to

exhaust any available administrative remedies before filing suit under 42 U.S.C. §1983.

The exhaustion requirement protects administrative agency authority, promotes

efficiency, and produces "a useful record for subsequent judicial consideration." *Woodford v.*

*Ngo*, 548 U.S.81, 89 (2006). A prisoner cannot satisfy the exhaustion requirement "by filing an

untimely or otherwise procedurally defective administrative grievance or appeal" because

"proper exhaustion of administrative remedies is necessary." *Woodford v. Ngo*, 548 U.S. 81, 83-

84 (2006); see also *Johnson v. Ford*, 261 F. App'x 752, 755 (5th Cir. 2008)( the Fifth Circuit

takes "a strict approach" to the PLRA's exhaustion requirement)(*citing Days v. Johnson*, 322

F.3d 863, 866 (5th Cir. 2003)); *Lane v. Harris Cty. Med. Dep't*, No. 06-20935, 2008 WL 116333,

at *1 (5th Cir. Jan.11,2008)( under the PLRA, "the prisoner must not only pursue all available

avenues of relief; he must also comply with all administrative deadlines and procedural rules"). Indeed, "a prisoner must now exhaust administrative remedies even where the relief sought – monetary damages – cannot be granted by the administrative process." *Booth v. Churner*, 532 U.S. 731, 739 (2001).

The requirement that claims be exhausted prior to the filing of a lawsuit is mandatory. *Gonzalez v. Seal*, 702 F.3d 785 (5th Cir. 2012). "Whether a prisoner has exhausted administrative remedies is a mixed question of law and fact." *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010). As "exhaustion is a threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time, . . . judges may resolve factual disputes concerning exhaustion without the participation of a jury." *Id.* at 272. A prisoner should face a significant consequence for deviating from the prison grievance procedural rules:

> The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievance complies with the system's critical procedural rules. A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction . . . .

*Woodford* at 95.

Mississippi Code Annotated § 47-5-801 grants the Mississippi Department of Corrections the authority to adopt an administrative review procedure at each of its prisons. Under this statutory authority, the Mississippi Department of Corrections created the Administrative Remedy Program ("ARP") through which an inmate may seek formal review of a grievance relating to any aspect of his incarceration. This court approved the ARP Program in *Gates v. Collier*, GC 71-6-S-D (N.D. Miss. Feb. 15, 1994).

-9-

The two-step ARP process begins when an inmate first submits his grievance in writing to the prison's Legal Claims Adjudicator within thirty days of the incident. *Howard v. Epps*, No. 5:12CV61-KS-MTP, 2013 WL 2367880, at *2 (S.D. Miss. May 29, 2013). The Adjudicator initially screens the grievance and determines whether to accept it into the ARP process. *Id.* The screening phase operates as a filter – applied before the formal grievance process begins – to remove procedurally defective or otherwise invalid grievances.

As set forth above, a prisoner cannot satisfy the exhaustion requirement by filing a procedurally defective grievance or appeal. *Woodford, supra.* Hence, rejection of a grievance during the screening phase terminates the grievance – and does *not* count as exhaustion of the grievance process. *See Seales v. Shaw*, No. 5:15-CV-59-KS-MTP, 2016 WL 616749, at *3 (S.D. Miss. Jan. 26, 2016), *report and recommendation adopted sub nom. Seales v. Wilkinson Cty. Corr. Facility*, No. 5:15-CV59-KS-MTP, 2016 WL 616385 (S.D. Miss. Feb. 16, 2016) (finding rejection during initial MDOC screening process not to constitute exhaustion); *Goldmon v. Epps*, No. 4:14-CV-0112-SA-SAA, 2015 WL 5022087, at *3 (N.D. Miss. Aug. 24, 2015) (same); *see also Robinson v. Wheeler*, 338 Fed. Appx. 437 (5th Cir. 2009) (per curiam) (not reported) (upholding Louisiana initial screening provision of prison grievance process). However, if the defects in the original grievance were minor ("technical" or "matters of form") an inmate may submit a corrected grievance within five days of the rejection:

> If a request is rejected for technical reasons or matters of form, the inmate shall have five days from the date of rejection to file his/her corrected grievance.

*See* https://www.mdoc.ms.gov/Inmate-Info/Documents/CHAPTER_VIII.pdf ("Inmate Handbook, Chapter VIII, Administrative Remedy Program") (last visited April 3, 2019)).

If accepted, the grievance is forwarded to the appropriate official who then reviews it and issues a First Step Response to the inmate. *Howard, supra.* An inmate may only pursue one

grievance at a time; additional requests "will be logged and set aside for handling at the Director's

Discretion":

> If an inmate submits additional requests during the period of Step One review of his
> request, the first request will be accepted and handled.[4] The others will be logged and
> set aside for handling at the Director's discretion. A maximum of ten requests will be
> logged. Requests above that number will be returned to the inmate and not filed.

Inmate Handbook, Chapter VIII, Administrative Remedy Program, VII(A).

If the inmate is unsatisfied with the First Step Response, he may continue to the Second

Step by completing an appropriate grievance form and sending it to the Legal Claims

Adjudicator. *Id.* The Superintendent, Warden or Community Corrections Director will then

issue a final ruling, or Second Step Response – which completes the ARP process. *Id.* Issuance

of the Second Step Response is one way to complete the grievance process.[5] If the inmate is

unsatisfied with that response, he may file suit in state or federal court. *Id.*

The Inmate Handbook requires that a grievance "present as many facts as possible to

answer all the questions who, what, when, where, and how concerning the incident." *See*

*Pinkton v. Jenkins*, 2019 WL 1089087, *3 (N.D. Miss. 2019). Although a plaintiff is "not

---

[4] Hence, only the first grievance will be accepted; while it is pending, any subsequent ones
will be backlogged. The grievance process will not begin for the second grievance until the first
grievance has been resolved. Likewise, the process will not begin for the third grievance until the
second has been resolved, and so on – until no more grievances are backlogged.

[5] An inmate may also complete the grievance process if delays cause the process to take
longer than 90 days from the time the grievance is accepted. Inmate Handbook, Section VIII,
Paragraph (VIII(A)). However, the 90-day period does not begin to run for a grievance that has
been rejected or backlogged. *See Goldman, supra; Robinson, supra* (*rejected* grievance cannot
form the basis for exhaustion of administrative remedies); *Boyd v. Gaddis*, No. 3:20-CV-420-
TSL-RPM, 2021 WL 4047392, at *3 (S.D. Miss. Aug. 13, 2021), *report and recommendation
adopted,* No. 3:20CV420 TSL-RPM, 2021 WL 4037866 (S.D. Miss. Sept. 3, 2021), *appeal
dismissed,* No. 21-60732, 2021 WL 7543194 (5th Cir. Nov. 19, 2021) (*backlogged* grievances
may not form the basis for exhaustion of administrative remedies).

required to present specific legal theories in his grievances, . . . he [is] required to provide facts and to alert prison officials of the problem in order to give them an opportunity to address it." *Johnson v. Johnson*, 385 F.3d 503, 517 (5th Cir. 2004). "[T]his portion of [MDOC's] ARP requires that all officials involved be named or at least referenced in description." *Holton v. Hogan*, 2018 WL 707544, *3 (S.D. Miss. 2018); *see also Pinkton*, 2019 WL 1089087 at *3 (dismissing claims against two defendants for failure to exhaust administrative remedies where plaintiff never filed grievance regarding the actions of the two defendants).

### Boyd's Arguments Regarding Exhaustion

Boyd argues that, as to the Mississippi Department of Corrections grievance process, he could go no further:

> [H]e in fact complied with the administrative procedure by pursuing his grievance to conclusion and putting prison officials on notice of his complaint. Moreover, … he brought his grievance to the prison officials' attention, they rejected and refused to hear it, so he corrected his grievance and resubmitted his grievance. Thereafter, he received a letter warning him not to send another grievance arguing the same as in his rejected grievance, that his grievance was completed, so plaintiff files his complaint …. So, he had appealed as far as he could go. The prison officials did not wish to address his complaint.

Doc. 112 at 3. As will be discussed below, Boyd is correct that he could go no further in the grievance process, but he, himself, terminated the process before completion by refusing to comply with the grievance procedure.

### Dean Boyd Did Not Exhaust His Administrative Remedies

As outlined above, Dean Boyd did not exhaust his administrative remedies before filing the instant case. His first grievance was rejected because he sought relief (money damages) not available through the Administrative Remedy Program. He filed other grievances, but all of them also sought money damages – and were likewise rejected. Despite being told multiple times, in writing, that the Administrative Remedy Program did not have the power to grant money damages as relief, he

- 12 -

continued filing grievances seeking money damages. All of the relevant grievances were properly rejected, and a rejected grievance cannot form the basis for exhausting administrative remedies. *See Goldmon, supra*; *Robinson, supra*. Thus, as Boyd has not exhausted his administrative remedies as to his claims against defendant Charles Thomas, those claims will be dismissed without prejudice.

### Conclusion

For the reasons set forth above, the instant motion for summary judgment will be granted, and all the plaintiff's claims against defendant Charles Thomas will be dismissed without prejudice for failure to exhaust administrative remedies. As Thomas is the only remaining defendant, the instant case will be dismissed in its entirety. A final judgment consistent with this memorandum opinion will issue today.

**SO ORDERED**, this, the 25ᵗʰ day of April, 2023.

_____
SENIOR U.S. DISTRICT JUDGE

- 13 -